**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KENNETH STONITSCH
Plaintiff

vs

Case No. 1:09-cv-593
(Spiegel, J.)
(Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

---

## REPORT AND RECOMMENDATIONS

---

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on Plaintiff's Statement of Errors (Doc. 10), the Commissioner's Memorandum in Opposition. (Doc. 16) and Plaintiff's Reply Brief. (Doc. 17) .

## PROCEDURAL HISTORY

Plaintiff, Kenneth Stonitsch, filed applications for DIB and SSI on December 29, 2006, alleging disability since January 2, 2005, due to chronic lower extremity edema, cellulitis, trouble walking, trouble going to the bathroom, trouble cooking meals, trouble climbing stairs and chronic lower extremity edema cellulitis. (Tr. 168-70, 183)[1]. Plaintiff's applications were denied initially and upon reconsideration. (Tr. 93-96). Plaintiff requested and was granted a *de novo* hearing before an administrative law judge (ALJ). (Tr. 128-33). On June 4, 2008, Plaintiff, who was represented by counsel, appeared and testified at a hearing before an ALJ in Cincinnati, Ohio. (Tr. 32-53). A medical expert (ME) Walter Hulon, M.D., (Tr. 53-82) and vocational expert (VE), Shoshana R. Pehowic, also appeared and testified at the hearing. (Tr. 82-88).

---

[1] Plaintiff's application for SSI was not included in the transcript.

On June 12, 2008, the ALJ issued a decision denying DIB and SSI applications. The ALJ determined that Plaintiff suffers from the severe impairments of chronic bilateral lower extremity edema/venous insufficiency and cellulitis with a history of ulcers; obesity; left ear hearing loss; and lumbosacral degenerative joint disease and spondylolisthesis at L4 on L5, but that such impairments do not alone or in combination meet or equal the level of severity described in the Listing of Impairments. (Tr. 20, 23). According to the ALJ, Plaintiff retains the residual functional capacity (RFC) for light work with the following restrictions:

> He can lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours in an eight-hour workday; however, he can do so for no longer than two hours at a time, and must then be able to sit for 5-10 minutes. He can sit for six hours in an eight-hour workday; he can do so for no longer than two hours at a time, and must then be able to walk for 15 minutes. He can only occasionally stoop, kneel, and crouch. He should not crawl, balance, or climb ladders, ropes, or scaffolds. He should not work at unprotected heights or around hazardous machinery.

(Tr. 23). The ALJ determined that Plaintiff's allegations regarding his limitations are not totally credible. (Tr. 24-25). The ALJ next determined that Plaintiff is unable to perform his past relevant work as an extruder operator and a product utility worker. (Tr. 26). The ALJ further found that Plaintiff can perform a number of jobs which exist in representative numbers in the national economy. *Id.* Consequently, the ALJ concluded that Plaintiff is not disabled under the Act. (Tr. 27). The Appeals Council denied Plaintiff's request for review (Tr. 1-3), making the decision of the ALJ the final administrative decision of the Commissioner.

**PLAINTIFF'S TESTIMONY AT THE HEARING**

The ALJ summarized Plaintiff's testimony as follows:

> The claimant testified that he has been homeless since August 2007. He sells street magazines and earns about $100 a month doing that. He is a registered vendor. He continues to have swelling in his legs, and he has poor balance. He cannot hear in his left ear, although he can hear with his right ear. He testified that he can lift 20 pounds, which is about the weight of the bag that holds his belongings. The pain is in his feet, legs, and back. It is constant, but is aggravated by exertion or extended standing or walking. He rated the pain as

> ranging from 7-9 on a scale of 0-10, with 10 being the highest level of pain. He has been prescribed Metformin for his diabetes and Lasix for his leg swelling. However, he does not always take his Metformin because it makes him sick as a side effect, and he does not take his Lasix because it is difficult to be homeless and need to urinate frequently. He noted that the medications made him feel better, except for their side effects. He did not allege that he was unable to afford his medications. He has been hospitalized numerous times for cellulitis, which is partly due to a lack of follow-up care on his part. He was wearing compression stockings, but he stopped wearing those about a week and a half before the hearing because he was worried about his legs turning blue.

(Tr. 24).

## MEDICAL RECORD

Plaintiff was hospitalized for antibiotic therapy in June 2006 due to an infection in his right leg. Plaintiff had a history of chronic peripheral edema with medical noncompliance and a history of nonunion of a right distal fibular fracture from 1999. Plaintiff reported that he either got scratched or bitten by a cat over the distal fibular scar and over the last week had developed increasing pain, tenderness and swelling with redness extending proximal to the right knee. He noted occasional tactile fevers, no headache, no abdominal pain, no lower extremity numbness or weakness on the left. He had no pus coming from any particular wound. Plaintiff's only medication at that time was a "water pill." Upon examination, Plaintiff's lower extremities were edematous. There were some venous stasis changes noted about the distal extremity. Plaintiff's joints had a full range of motion. There was sign of no clubbing, cyanosis, or edema. Plaintiff underwent a venous duplex scan while hospitalized, which showed no evidence of any deep or superficial venous thrombosis in the right lower leg. Plaintiff was diagnosed with cellulitis of the right leg. (Tr. 226-96).

Plaintiff was hospitalized again from September 5 - 12, 2006, for right lower extremity cellulitis, lower extremity edema and chronic alcohol use. He came to the emergency room complaining of leg pain and erythema over his right leg. Upon examination, Plaintiff's lower right leg was edemous. His right leg had brawny edema with redness and warmth. There was an ulceration around Plaintiff's midshaft tibia. Plaintiff's neurological functions were intact. The

treating physician opined that Plaintiff's lower extremity edema was most likely due to venous stasis, so he underwent an echocardiogram and arterial dopplers, which showed no evidence of heart failure or arterial obstruction. Plaintiff underwent a venous duplex scan, which was negative for deep vein thrombosis. Plaintiff was also treated for alcohol withdrawal while in the hospital, but there were no problems or evidence of withdrawal. After Plaintiff's condition stabilized, he was given several prescriptions upon his discharge to a skilled nursing facility. (Tr. 297-414).

Plaintiff was admitted to Ivy Woods Health Care nursing facility from Christ Hospital for treatment of his cellulitis of his right leg from September 12-24, 2006. Plaintiff checked himself out of the nursing home two weeks later against medical advice because he did not want to take his medication or use a wheelchair. (Tr. 418-77).

On September 26, 2006, Plaintiff was seen at the emergency room for a leg wound after he had slipped from a ladder and cut his right lower leg against the wood of the ladder. Plaintiff left the emergency department before workup could be completed. He was evaluated but not treated. (Tr. 504-06).

Plaintiff was examined by state agency consulting physician, Marvin Fritzhand, M.D., in February 2007. Dr. Fritzhand reported that Plaintiff was "massively obese" and walked with a limping antalgic gait, had difficulty hearing and understanding conversational voice, had profound woody induration and brawny edema involving the lower legs and feet, profound swelling of the feet, absent patellar and Achilles tendon reflexes, inability to stand on either leg, positive straight leg raise, and diminished pinprick and light touch over the lower legs and feet. Further examination revealed that Plaintiff could squat without difficulty. His lungs were clear and his heart rate was regular, without a murmur or gallop. Plaintiff's abdomen was massively protuberant, but his abdomen sounds were normal. Plaintiff's ranges of motion throughout were normal, except for a slightly diminished range of spinal motion, in his hips with his knees flexed. Plaintiff's ankle flexion was diminished as was his knee flexion. There was no evidence of muscle weakness or atrophy. Dr. Fritzhand diagnosed morbid obesity, degenerative joint disease of the lumbar spine, spondylolisthesis at L4 on L5, chronic ethanol abuse, nutritional peripheral neuropathy, history of anemia and thrombocytopenia, chronic venous insufficiency, history of

recurrent cellulitis of the right lower extremity, bilateral sensorineural deafness, profound chronic venous insufficiency with marked woody induration and brawny edema, and massive hepatomegaly. Dr. Fritzhand opined that Plaintiff was incapable of performing even a mild amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. He opined that Plaintiff had no difficulty reaching, grasping, and handling objects, and that there were no visual or environmental limitations. (Tr. 478-86).

In March 2007, Willa Caldwell, M.D., a state agency reviewing physician, reported that Plaintiff could perform medium exertional level work except that he could never climb ladders, ropes, or scaffolds and had limited hearing ability. Dr. Caldwell opined that Plaintiff's allegations were only partially credible when compared to the medical findings. Dr. Caldwell further opined that the Dr. Fritzhand gave severe limitations which were not supported by the medical evidence of record or the objective findings from his own examination. (Tr. 487-94). In June 2007, W. Jerry McCloud, M.D., another state agency reviewing physician, affirmed Dr. Caldwell's assessment. (Tr. 649).

Plaintiff was seen in the emergency room for a laceration on his lower leg, after he had fallen from a ladder on March 7, 2007. (Tr. 520). X-rays showed marked generalized soft tissue swelling, but no acute fracture. (Tr. 509-10). Plaintiff's laceration required wound care and sutures. (Tr. 520). Plaintiff was discharged to home in good condition with instructions on wound care and to follow-up with suture removal. (Tr. 503). Plaintiff, however, did not follow-up with appropriate suture removal or wound care. He had the sutures removed by the emergency department on March 27, 2007. (Tr. 512-13). He was seen at the hospital the following month with complaints of pain, redness and swelling to the area with evidence of infection. (Tr. 496-648). X-rays showed soft tissue swelling with evidence of ulceration at the medial aspect of the ankle. (Tr. 507-08). An MRI of the right ankle taken on April 14, 2007, showed medial right ankle soft tissue edema, nonspecific in nature, compatible with cellulitis with medial soft tissue ulceration. There was no evidence of liquified abscess involving the medial right ankle or evidence of osteomyelitis of the medial right ankle. The report indicated status post prior reduction internal fixation of a fibular fracture. There was a 1.7 cm osteochondral defect in situ involving the central and lateral talar dome. There was congenital

deformity of the navicular bone, with secondary chronic degenerative reactive signal changes without evidence of recent fracture. Remote fracture could result in this appearance with secondary sclerotic changes. (Tr. 707-09). Plaintiff was diagnosed with an ulcer with purulent discharge on his right ankle with possible osteomyelitis. (Tr. 497).

Plaintiff was hospitalized from June 25, 2007 through July 6, 2007, for lower extremity cellulitis, chronic lower extremity edema and hypothyroidism with medical noncompliance. He presented to the emergency department because of increasing pain and swelling in his left lower extremity. He was seen in consultation by the podiatry department and underwent an incision and drainage of the left lower extremity. The patient was also started on IV Unasyn with improvement in his symptoms. For his hypothyroidism, Plaintiff was also restarted on oral Synthroid, with which he had been noncompliant. His MRI was negative for osteomyelitis. As part of his pre-op evaluation, Plaintiff did have an EKG, which was mildly abnormal. He underwent a GXT - A chemical stress echo, which was negative. (Tr. 650-76).

In August 2007, Plaintiff was seen in the emergency room complaining of chest pain. Upon examination, Plaintiff's cranial nerves and motor functioning were intact, his gait was normal and his heart rate and rhythm were regular. Diagnostic testing was largely unremarkable. (Tr. 683-85).

On September 6, 2007, Plaintiff was seen in the emergency department complaining of tremors. He reported that he had stopped drinking yesterday, but reported inconsistencies to other emergency personnel. Plaintiff's neurological functions were intact, his strength was full and equal. Plaintiff's heart rate and rhythm were regular. A head CT scan showed some chronic changes but no acute bleeding or tumor. The emergency room treating physician opined that Plaintiff did not have any type of seizure activity and clinically did not appear to be having alcohol withdrawal at that time. He was not tachycardic or hypertensive. (Tr. 678-82).

Plaintiff was hospitalized from September 17-21, 2007, for cellulitis, chronic lower extremity edema, exacerbated and alcohol withdrawal. Plaintiff's cellulitis and edema were remarkably improved after treatment. An ultrasound of Plaintiff's liver showed cirrhosis as well as hypersplenism. Plaintiff's blood sugar was high, and he was placed on a diabetic diet. (Tr. 691-705).

**APPLICABLE LAW**

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(1),423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process

for disability determinations. 20 C.F.R. § 416.920. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 416.925(a). If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 416.920(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

The Commissioner's Regulations mandate ALJs to provide meaningful explanations for the weight they give to a particular medical source opinion. As to a treating physician or psychologist, the Regulations state, "We will always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion." " *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004); (quoting 20 C.F.R. §404.1527(d)(2)). Similarly, with regard to non-examining state agency physicians or psychologists, the Regulations mandate, "Unless the treating physician's opinion is given controlling weight, the administrative law judge <u>must explain</u> in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. §404.1527(f)(2)(ii) (emphasis added); *see* 20 C.F.R. §416.927(f)(2)(ii).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v.*

*Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits

granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher,* 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

Plaintiff assigns two errors in this case. First, Plaintiff argues the ALJ erred in determining Plaintiff's RFC. Plaintiff contends the ALJ placed significant weight on the non-examining state agency opinion and based his RFC in large part on Dr. Hulon"s reviewing medical testimony, while giving Dr. Fritzhand's examining assessment little weight. Plaintiff argues that Dr. Fritzhand's examining physician opinion is entitled to more weight than that of a

purely reviewing source, such as Dr. Hulon. Next, Plaintiff argues that the ALJ failed to adequately explain his reasons for rejecting Dr. Fritzhand"s opinion. According to Plaintiff, Dr. Hulon's opinion was not based on the facts of this case – he misinterpreted the weight of the evidence, relying heavily on the opinion of reviewing physicians and discounting the opinion of a physician who actually examined Plaintiff. Plaintiff's second assignment of error is that the ALJ erred in determining that Plaintiff's credibility was poor.

The ALJ began his discussion of Plaintiff's RFC by stating, in part, that he "considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSR's [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-03p." (Tr. 23). The ALJ based his assessment of Plaintiff's RFC for a limited range of light work on the state agency reviewing physicians, Drs. Caldwell and McCloud and the ME, Dr. Hulon's opinion. The ALJ explained:

> As for the opinion evidence, the state agency determined that the claimant can perform other work at a medium exertional level. Significant weight is given to this opinion, although the undersigned gives the claimant the benefit of the doubt and limits him to a light residual functional capacity.
>
> Significant weight is also given to the testimony of Walter Hulon, M.D., who was the medical expert who testified at the hearing. Dr. Hulon testified that the claimant's conditions are largely treatable, which is corroborated by the claimant's own testimony that his swelling was better when he took his Lasix and wore the compression stockings. He noted that the claimant has a history of non-compliance. The residual functional capacity finding of this decision is based in large part on his testimony, in addition to the objective medical evidence in file and the credible portions of the claimant's testimony. He testified that the claimant could perform work at a medium exertional level in accordance with the assessment of the state agency, although, as stated above, the undersigned gave the claimant the benefit of the doubt and limited him to light work.

(Tr. 25, citation to record omitted).

As to Dr. Fritzhand's opinions, The ALJ noted:

> Little weight is given to the opinion of Martin Fritzhand, M.D. He assessed the claimant's ability to perform work related activities at the end of his consultative examination report. He opined that the claimant can perform essentially no work activity, primarily due to his lower extremity edema. However, Dr. Hulon testified that the claimant weighed 270 pounds when Dr. Fritzhand gave his opinion, whereas the claimant testified he has lost 60 pounds since

> January 2007. Furthermore, if the claimant were compliant with treatment, including medication and compression hose, he should be able to perform work-related activities because his impairments are treatable. Additionally, that the claimant testified that he can lift the 20-pound bag that holds his belongings indicates that Dr. Fritzhand's assessment that he cannot perform even a mild amount of lifting or other exertional activities is inaccurate.

(Tr. 25-26, citation to record omitted).

The Court agrees with Plaintiff that the ALJ failed to adequately explain his reasons for rejecting Dr. Fritzhand's opinion. This was no small error because the plain language of Regulations emphasizes the mandatory nature of this factor-based weighing by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions). In addition, not only was the ALJ's omission of the required weighing contrary to the Regulations, *see* 20 C.F.R. §404.152(f)(ii), it was contrary to the Commissioner's Ruling 96-6p, which provides:

> [T]he opinions of State agency medical and psychological consultants ... can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Social Security Ruling 96-6p, 1996 WL 374180 at *3.

The ALJ's failure to follow this mandatory requirement set by the Regulations is also problematic because Dr. Fritzhand examined Plaintiff at the request of the Ohio Bureau of Disability Determination ("BDD") and because Dr. Fritzhand's opinion about Plaintiff's exertional work limitations tends to support his claim that he was under a disability. An "ALJ

must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *cf. Bowen v. Commissioner*, 478 F.3d 742, 747 (6th Cir. 2007)(ALJ erred by ignoring treating source's opinion). To the extent the ALJ selectively referenced a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not, the ALJ's RFC does not accurately describe Plaintiff's abilities and the ALJ's decision upon which it is based is not supported by substantial evidence. *See Howard v. Commissioner*, 276 F.3d 235, 240-41 (6th Cir. 2002).

Turning to Dr. Hulon, the ALJ relied on this non-treating medical expert to support his assessment of Plaintiff's RFC. In doing so, the ALJ erred by not evaluating Dr. Hulon's opinions under the required legal criteria. *See* Tr. 25. The ALJ thus failed to comply with the Commissioner's Regulations, which required the ALJ to evaluate the opinions of non-treating medical experts, under the same regulatory factors – supportability, consistency, specialization, *etc.* – that apply to treating medical source opinions. *See* Soc. Soc. Ruling 96-6p, 1996 WL 374180 at *2-*3 (interpreting, in part, 20 C.F.R. §404.1527(f)).

In addition, at the Ohio BDD's request, Dr. Caldwell reviewed the record in March 2007 and concluded that Plaintiff would be limited to medium exertional level work except that he could never climb ladders, ropes, or scaffolds and had limited hearing ability. (Tr. 487-94). Another state agency physician, Dr. McCloud reviewed the record and affirmed the March 2007 assessment. (Tr. 649). The ALJ's decision reveals no analysis as to their opinions as well. This was contrary to the Regulations. *See* 20 C.F.R. §404.1527(f).

The Court concludes that Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above.[2] On remand, the ALJ should be directed to (1) determine the weight to be afforded to all medical source opinions; and (2) determine anew, by applying the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB or SSI.

---

[2] Because of this conclusion, and the resulting need to remand this case for further administrative proceedings, an in-depth analysis of Plaintiff's remaining challenges to the ALJ's decision is unwarranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner by **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 9/17/10

Timothy S. Hogan
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Batten\R&R.09-593.Stonitsch.wpd